IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMUEL B. RANDOLPH, IV, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 2:19-790 |
| v. | ) |
| | ) Chief Judge Mark R. Hornak |
| JOHN WETZEL, *et al.*, | ) Magistrate Judge Patricia L. Dodge |
| | ) |
| Defendants. | ) |
| | ) |

**REPORT AND RECOMMENDATION**

**I.    Recommendation**

It is respectfully recommended that the Court grant the Motion to Dismiss (ECF No. 41) filed by Harry Cancelmi, Jr., the Public Defender of Greene County, Pennsylvania. In his motion, he seeks the dismissal of all claims Plaintiff Samuel B. Randolph, IV has brought against him in the Amended Complaint (ECF No. 25).

**II.   Report**

    **A.   Relevant Procedural History**

Plaintiff is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") who is currently housed at SCI Phoenix. Plaintiff is proceeding *pro se* and has been granted *in forma pauperis* status in this civil action, in which he brings constitutional tort claims under 42 U.S.C. § 1983, related state law claims, and claims under the Americans with Disabilities Act and the Rehabilitation Act.

The events in question in this lawsuit occurred in 2017 when Plaintiff was housed at SCI Greene. Plaintiff alleges that he is disabled because of spinal cord and leg injuries. (Amend.

1

Compl. ¶¶ 3-7.) The numerous claims Plaintiff asserts in the Amended Complaint are premised upon allegations that on several occasions when he was at SCI Greene, he was unnecessarily force fed and subjected to the excessive use of force; was confined in a small, isolated cell under conditions that amounted to unlawful solitary confinement; was subjected to an unlawful strip search; received inadequate medical care and accommodations for his disabilities; and was retaliated against because he complained about the conditions of his confinement at SCI Greene.

Plaintiff commenced this lawsuit in the United States District Court for the Eastern District of Pennsylvania. In his original complaint he named over fifty defendants and raised claims that challenged the conditions of his confinement at both SCI Greene and SCI Phoenix. On June 21, 2019, the Eastern District Court issued a memorandum and order in which it held that joinder of the claims pertaining to the two correctional institutions was improper. The Court severed the claims related to SCI Greene from those related to SCI Phoenix, directed its Clerk of Court to open a new lawsuit with respect to the SCI Greene claims, and transferred that new lawsuit to this Court where venue for the SCI Greene claims would be proper. (*See* ECF No. 1.)

After his civil action was opened in this Court, Plaintiff sought and was granted leave to file an amended complaint. (*See* ECF Nos. 15-16, 18-19, 21-23.) His Amended Complaint (ECF No. 25), which is the operative pleading, was docketed on April 2, 2020. It consists of sixty-two pages with over two hundred paragraphs, and it names approximately twenty-eight defendants (not including John/Jane Doe defendants). The Amended Complaint brings eighteen causes of action which are numbered Counts I through XVIII. All but one of these claims (Claims XVIII) challenge his conditions of confinement at SCI Greene and assert wrongdoing on the part of DOC Secretary John E. Wetzel, SCI Greene officials, employees and/or medical personnel.

2

Public Defender Cancelmi is one of the named defendants in the Amended Complaint. The final claim in the Amended Complaint, Count XVIII, is brought against him and a John Doe DOC attorney. Plaintiff's allegations against Public Defender Cancelmi are based solely upon his representation of Plaintiff during injunction proceedings initiated by the DOC in April 2017 in the Court of Common Pleas of Greene County (the "state court") in which it sought a court order to permit medical staff at SCI Greene to examine Plaintiff and provide him with hydration and nutrition by means of a nasogastric tube.

Public Defender Cancelmi has filed a Motion to Dismiss (ECF No. 41) in which he contends that the Amended Complaint fails to state a claim against him and, therefore, he should be dismissed from this lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See also* Brief in Support, ECF No. 42.) Plaintiff has filed a brief in opposition of Public Defender Cancelmi's motion. (ECF No. 47.)[1]

### B. Standard of Review

At the pleading stage, Rule 8 requires a "short plain statement" of facts, not legal conclusions, "showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court held that, pertaining to Rule 12(b)(6)'s standard of review, a complaint must include factual allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

---

[1] The numerous DOC defendants named in the Amended Complaint have filed an Answer (ECF No. 50) and a motion for judgment on the pleadings with respect to certain claims asserted against them in the Amended Complaint (ECF No. 51). Additionally, three of the other named defendants have filed a motion to dismiss (ECF No. 67) the claims asserted against them. Plaintiff has not yet filed his responses to those motions and, therefore, they are not ripe for review.

3

662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).

In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. *Id.* at 679.

The Court of Appeals has summarized this inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

"A document filed *pro se* is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established.").

In assessing a motion to dismiss, courts may generally only consider the allegations that are set forth in the complaint. *See, e.g., In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, courts may also consider matters of public record, undisputedly authentic documents attached to a motion to dismiss, and integral documents that form the basis of a claim. *Id.; Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.3 (3d Cir. 2006). Although the Amended Complaint refers to various exhibits, no exhibits were attached to it. However, Plaintiff did attach as exhibits to his opposition brief (ECF No. 47) documents that were filed in the state court injunction proceedings. (*See* ECF Nos. 47-1 through 47-9.) Public Defender Cancelmi does not challenge the authenticity of these documents and, in fact, requests that the Court take judicial notice of documents that were filed in the state court injunction proceeding. (ECF No. 42 at p. 9 n.2.) Therefore, it is appropriate for the Court to consider these documents in evaluating the instant motion to dismiss.

### C. Relevant Facts

On July 2, 2015, the DOC transferred Plaintiff from SCI Graterford to SCI Greene. (Amend. Compl. ¶ 74). Shortly thereafter, Plaintiff was visited by SCI Greene officials who wanted him to accept food trays which he was refusing. (*Id.* ¶ 75.) Plaintiff told the officials that "he prefers to eat his own health[y] well-balanced diet" because the food provided to him on the trays was "often spit in…or contamine[d]." (*Id.*) The officials requested that Plaintiff accept the food that was being served to him so that they could be sure that he was not on a hunger strike. Plaintiff agreed to do so "to establish that he wasn't on a hunger strike." (*Id.*)

In February 2017, Plaintiff contacted Secretary Wetzel and complained to him about the conditions of his confinement at SCI Greene. (*Id.* ¶ 78.) Plaintiff alleges that officials, employees, and medical staff at SCI Greene engaged in a conspiracy to retaliate against him and that, as part

5

of this conspiracy, they began denying Plaintiff food in order to establish, falsely, that he was on a hunger strike. (*Id.* ¶ 85.) They did so, Plaintiff alleges, so that they could obtain an injunction to permit them to force feed Plaintiff and "torture [him] unnecessarily[.]" (*Id.* ¶ 17.)

On or around April 21, 2017, the DOC filed in state court an *ex parte* application for a preliminary injunction. It sought authorization, through its medical staff, to examine Plaintiff and administer medical treatment to him if necessary, including suppling nutrition and hydration to him via a nasogastric tube, in order to preserve his health and life. (*Id.* ¶¶ 99-100; Pl's Ex. 1, ECF No. 47-1 and ECF No. 47-4.) Public Defender Cancelmi represented Plaintiff during the injunction proceedings that took place in state court over the course of the next few months. (Amend. Compl. ¶¶ 99-100.)

The state court held a preliminary injunction hearing on April 24, 2017 at which Plaintiff, Dr. Denise Smyth and William Nicolson, SCI Greene's Chief Healthcare Administrator, testified. (*See* Pl's Ex. 2, Preliminary Hr'g Tr., 4/24/17.) At the conclusion of the hearing, the state court entered an order that permitted medical staff to examine Plaintiff and perform diagnostic tests and administer medical treatment to him, including hydration and medication as needed. However, the state court denied permission to force feed Plaintiff. The state court advised that its order would remain in effect for thirty days or by further order of court. (*Id.* at pp. 77-78; Pl's Ex. 3, ECF No. 47-3; Amend. Compl. ¶ 101.)

On May 5, 2017, the DOC filed a second *ex parte* application for an injunction in which it asserted that Plaintiff was continuing to refuse to eat, his condition had worsened, and he was in imminent danger of death or irreparable harm unless medical staff were permitted to supply nutrition to him intravenously. (Pl's Ex. 5, ECF No. 47-5 at pp. 1-3.) Plaintiff alleges that the DOC's application contained false information and greatly exaggerated his condition and was part

of the continuing conspiracy on the part of SCI Greene staff and medical personnel to unnecessarily force feed him in order to torture and retaliate against him. (*See, e.g.,* Amend. Compl. ¶¶ 17-20, 49, 94, 102, 115.)

On May 5, 2017, the state court granted the DOC's *ex parte* injunction application and scheduled a hearing for May 10, 2017. (Pl's Ex. 7, ECF No. 47-7 at pp. 1-2.) Plaintiff avers that on May 5, 2017 he was "force fed unnecessarily and done so in retaliation and to torture [him]." (Amend. Compl. ¶ 94.) He alleges that "[a]ll of the defendants involved" conspired against him and that he sustained injuries during the "botch[ed]" force feeding procedures. (*Id.*; see also *id.* ¶ 96.)

The state court held a hearing on May 10, 2017. Thereafter, it ordered that the preliminary injunction would remain in effect and another hearing would be held in approximately sixty days. (Pl's Ex. 8, ECF No. 47-8 at pp. 1-3.) According to the Amended Complaint, the DOC currently has "a permanent injunction to continuously forcefeed [P]laintiff anytime they so desire[.]" (Amend. Compl. ¶ 106.) The Amended Complaint does not indicate that Public Defender Cancelmi represented Plaintiff after the events discussed here.

Throughout the Amended Complaint Plaintiff makes conclusory allegations that all the defendants in this case were involved in a conspiracy. He alleges, without any supporting factual basis, that Public Defender Cancelmi "entered into a secret agreement to violate [his] U.S. Constitutional Rights." (*Id.* ¶ 99; *see also id.* ¶ 216 (alleging that Public Defender Cancelmi entered into a "backdoor agreement and stipulation" that was against Plaintiff's interests.))

The only other allegation of wrongdoing that Plaintiff attributes to Public Defender Cancelmi is that he had a conflict of interest because, prior to the 2017 state court injunction proceedings, he had previously represented individuals who are now defendants in the instant civil

7

rights lawsuit. (*Id.* ¶¶ 99, 214.) The Amended Complaint identifies only one such individual: Bruce Pokol, who is a nurse supervisor at SCI Greene. (*Id.* ¶¶ 48, 214.) Plaintiff alleges that Public Defender Cancelmi did not ask him to waive the purported conflict of interest and the implication is that he should not have represented Plaintiff under the circumstances. (*Id.* ¶¶ 99, 214.)

Notably, neither the Amended Complaint nor the state court records Plaintiff attached to his opposition brief indicate that Nurse Pokol had any involvement in the state court injunction proceedings. For example, Plaintiff does not allege, nor do the state court records demonstrate, that Nurse Pokol submitted an affidavit in support of the DOC's injunction applications or testified at any of the hearings held in the state court proceedings.

As set forth above, the Amended Complaint lists eighteen separate causes of actions. (*Id.* at pp. 35-57.) Plaintiff seeks compensatory and punitive damages against each defendant, as well as declaratory and injunctive relief. (*Id.* pp. 57-61.)

The only claim in the Amended Complaint that is pleaded against Public Defender Cancelmi is Count XVIII. In that claim, which Plaintiff brought under § 1983, he asserts that Public Defender Cancelmi violated his rights under the Sixth and Fourteenth Amendments because he was "operating under a conflict of interest, which adversely affected his performance and representation" of Plaintiff in the state court injunction proceedings. (Amend. Compl. ¶¶ 214-15.) The Amended Complaint also contains the speculative allegation that Public Defender Cancelmi entered into a "backdoor agreement and stipulation" with the DOC to violate his rights in order to obtain an injunction permitting that he be force fed. (*Id.* ¶ 216.)

Plaintiff asserts in his opposition brief that some of the other constitutional tort and state law claims raised in the Amended Complaint are also brought against Public Defender Cancelmi. However, even under a liberal reading of the Amended Complaint, only Count XVIII and perhaps

8

the broad conspiracy claim at Count XVII (discussed below), implicate Public Defender Cancelmi.[2] Plaintiff's other claims pertain to the alleged inadequate medical care he received at SCI Greene; the injuries medical personnel and SCI Greene staff allegedly inflicted upon him during forced feedings and when he was restrained and subjected to excessive use force; his solitary confinement; a strip search; and the alleged retaliatory actions of SCI Greene officials, employees and medical personnel.

### D. Discussion

Plaintiff brings Count XVIII against Public Defender Cancelmi under § 1983, which "provides a cause of action against *state actors* who violate an individual's rights under federal law." *Filarsky v. Delia*, 566 U.S. 377, 380 (2012) (emphasis added). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, *and must show that the alleged deprivation was committed by a person acting under color of state law*." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added).

---

[2] As discussed below, to state a claim under § 1983 Plaintiff must plead each defendant's personal involvement in the alleged constitutional violation. *See, e.g., Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (1988). Count XVIII is the only § 1983 claim in which Plaintiff adequately pled Public Defender Cancelmi's personal involvement. As for Plaintiff's state law tort claims, none of them allege wrongdoing on the part of Public Defender Cancelmi. Count II is a claim for assault and battery related to the injuries Plaintiff sustained when he was force fed, restrained, and tased with a "high voltage" device "over [his] heart." (Amend. Compl. at ¶¶ 142-46.) Count III is a claim for intentional infliction of emotional distress related to the alleged campaign of harassment waged against Plaintiff by those defendants who worked at SCI Greene and who subjected him to alleged use of excessive force, "including the utilization of a high-voltage taser[.]" (*Id.* ¶¶ 148-49.) Count IV is a claim for negligent infliction of emotional distress premised upon similar conduct. (*Id.* ¶¶ 152-53.) Count V asserts negligence on the part of SCI Greene correctional officers and medical staff for violating a duty of care to Plaintiff as a result of harm he allegedly suffered during the force feedings and incidents of excessive use of force. (*Id.* ¶¶ 155-56.) Count VIII, which is another claim of intentional infliction of emotional distress, is premised upon Plaintiff's alleged isolation in solitary confinement. (*Id.* ¶¶ 166-67.)

Additionally, a plaintiff must plead a defendant's personal involvement in the alleged deprivation of his constitutional right. *See, e.g., Rode*, 845 F.2d at 1207. That is because, as stated in the text of § 1983 itself, only a person who "subjects, or causes to be subjected" another person to a civil rights violation can be held liable under § 1983. Thus, each defendant can be held liable only for his or her own conduct. *See, e.g., id.; see also Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Barkes v. First Correctional Medical*, 766 F.3d 307, 316 (3d Cir. 2014) (*rev'd sub. nom. on other grounds* 575 U.S. 822 (2015)); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005) ("To impose liability on the individual defendants, Plaintiffs must show that each one individually participated in the alleged constitutional violation or approved of it.") (citing *C.H. v. Oliva*, 226 F.3d 198, 201-02 (3d Cir. 2000) (en banc)).

The only § 1983 claim in which Plaintiff sufficiently pleaded Public Defender Cancelmi's personal involvement is Count XVIII. Public Defender Cancelmi argues that the Amended Complaint fails to state a § 1983 claim against him at Count XVIII (or at any other count) because he was not acting "under color of state law" in his role as Plaintiff's attorney. He is correct that public defenders, like private attorneys, typically are not considered to have acted "under color of state law" for the purposes of a § 1983 claim. *Polk County v. Dobson*, 454 U.S. 312, 325 (1981) (a lawyer, including a public defender, is not, by virtue of being an officer of the court, a state actor "under color of state law" within the meaning of § 1983); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."); *Brown v. Joseph*, 463 F.2d 1046, 148 (3d Cir. 1972) (a public defender's "client is not the Commonwealth of Pennsylvania, whose legislative processes created his office; nor the people of [the] County, who appoint him to office and pay his salary. His client is a private individual, who, by reason of

10

indigency, is unable to retain and compensate other counsel. Essentially he is state-paid private counsel, assigned the responsibility of protecting the interests and defending the rights of a client. It is settled in this circuit that a private attorney is not a state officer so as to bring his actions within the purview of § 1983."); *see, e.g., Anthony v. Burns*, No. 1:20-cv-164, 2021 WL 1670131, *2 (W.D. Pa. Apr. 8, 2021) ("an attorney acting on behalf of his client is not a state actor for the purposes of a § 1983 claim."), report and recommendation adopted, 2021 WL 1662835 (W.D. Pa. Apr. 28, 2021)). Thus, the Amended Complaint fails to state a § 1983 claim against Public Defender Cancelmi as he was not acting "under color of state law" by representing Plaintiff.

There are circumstances in which a private party may be found to have engaged in state action and be held liable under § 1983, and the Amended Complaint alludes to one of them—albeit without enough specificity to survive dismissal. That is, "a private party acting in a conspiracy with state officials may be liable as a state actor." *Smith v. Wambaugh*, 29 F. Supp.2d 222, 226 (M.D. Pa. 1998) (citation omitted); *see, e.g., Melo v. Hafer*, 912 F.2d 628, 638 (3d Cir. 1990) ("[P]rivate parties acting in a conspiracy with a state official to deprive others of constitutional rights are also acting 'under color' of state law."); *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) ("Private persons, jointly engaged with state officials in the challenged action, are acting see [sic] 'under color' of law for purposes of § 1983 actions."); David W. Lee, HANDBOOK OF SECTION 1983 LITIGATION, § 1:04, Westlaw (database updated 2021).

As already noted, Plaintiff includes conclusory allegations throughout the Amended Complaint that all defendants engaged in a conspiracy to violate his rights and harm him. He speculates that Public Defender Cancelmi entered into a "backdoor agreement and stipulation" with the DOC to violate his rights in order to obtain an injunction that permitted force feeding. (*Id.* ¶ 216.) Plaintiff's conclusory legal statements and speculative allegations are not relevant when

evaluating a motion to dismiss, however. *See, e.g., Iqbal*, 556 U.S. at 678-79; *Fowler*, 578 F.3d at 210-11. Therefore, these allegations do not support the conclusion that the Amended Complaint sufficiently pleaded that Public Defender Cancelmi was acting "under color of state law" as required to state a § 1983 claim against him.

Similarly, in Count XVII Plaintiff brings a § 1983 claim ostensibly against all defendants in which he asserts that they "entered into an agreement to retaliate against [him] to torture [him], in order to teach [him] a lesson….The defendants committed overt acts toward plaintiff in furtherance of the plan and scheme to conspire against [him]. The defendants also intentionally separated plaintiff from his food in order to manufacture a hungers strike against [him], in order to torture and force feed him [un]necessarily." (Amend. Compl. ¶ 210.) Not only does this claim fail to sufficiently plead Public Defender Cancelmi's personal involvement, it also fails to sufficiently plead the elements of a conspiracy claim.

"To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law reached an understanding to deprive him of his constitutional rights. This requires that the state actors took concerted action based on an agreement to deprive the plaintiff of his constitutional rights, and that there was an actual underlying constitutional violation of the plaintiff's rights." *Harvard v. Cesnalis*, 973 F.3d 190, 207 (3d Cir. 2020) (internal quotations and citation omitted); *see, e.g., Jutrowski v. Township of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) ("To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law reached an understanding to deprive him of his constitutional rights.") (internal citations and quotations omitted). Although the agreement can be shown by direct or circumstantial evidence, a plaintiff cannot base his claim solely on suspicion and speculation. *See, e.g., Talley v. Varner*, 786 F. App'x 326, 329 (3d Cir. 2019) (citing *Young v. Kann*, 926 F.2d 1396,

1405 n.16 (3d Cir. 1991)) ("mere general allegation...[or] averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient [to state a claim]" (alterations in original) (quoting *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1400 (D. Del. 1984)); *Jackson v. Shouppe*, 2:17-cv-1135, 2018 WL 3361270, *2 (W.D. Pa. 2018) (same).

Here, Plaintiff has failed to allege any facts whatsoever beyond conclusory statements of conspiracy, let alone any facts that plausibly suggest a meeting of the minds, agreement or plan between Public Defender Cancelmi and any of the other defendants. Therefore, there are no allegations in the Amended Complaint to support a plausible claim that Public Defender Cancelmi engaged in a conspiracy with any other defendant. *See, e.g., Brandon v. Burkhart*, No. 1:16-cv-177, 2020 WL 5992281, *1 (W.D. Pa. Oct. 9, 2020) (plaintiff "pled only conclusory averments of a conspiracy, which is not enough to satisfy federal pleading standards.")

Finally, Public Defender Cancelmi argues that even if the Amended Complaint sufficiently pleaded that he acted under color of state law, Count XVIII still fails as a matter of law because Plaintiff had no Sixth Amendment right to counsel at the injunction proceedings. However, Plaintiff also alleges that Public Defender Cancelmi's alleged wrongdoing violated his right to due process under the Fourteenth Amendment, and Public Defender Cancelmi's brief does not address that portion of Plaintiff's claim. Nevertheless, as currently pled, the allegations of wrongdoing upon which Count XVIII is premised (the purported conflict of interest and the "backdoor agreement and stipulation") are too conclusory and speculative to sufficiently plead a violation of the Fourteenth Amendment on the part of Public Defender Cancelmi.

In conclusion, the Amended Complaint failed to plausibly allege that Public Defender Cancelmi acted "under color state law" or engaged in a conspiracy with the other defendants.

13

Moreover, even if the Amended Complaint had sufficiently pleaded that Public Defender Cancelmi acted under color of state law, it does not plausibly allege that he violated Plaintiff's constitutional rights in his role as Plaintiff's attorney during the 2017 state court injunction proceeding.

Based upon the foregoing, the Amended Complaint fails to state a claim against Public Defender Cancelmi. Therefore, it is respectfully recommended that the Court grant his Motion to Dismiss (ECF No. 41).

### E. Leave to Amend

When dismissing a civil rights case for failure to state a claim, a court must give a plaintiff the opportunity to amend a deficient complaint, irrespective of whether it is requested, unless doing so would be "inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alston v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

Under the circumstances presented here, Plaintiff may, if he so chooses, file another amended complaint to attempt to cure the pleading deficiencies with respect to his claims against Public Defender Cancelmi. However, Plaintiff may not do so until after the Court has issued its final decisions on the pending motions filed by the other defendants in this case.

### III. Conclusion

It is respectfully recommended that the Court grant Public Defender Cancelmi's Motion to Dismiss (ECF No. 41). Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed fourteen (14) days from the date of this Order to file objections to this Report and Recommendation. Failure to do so will waive the

right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


Dated: May 10, 2021

<u>/s/ Patricia L. Dodge</u>
PATRICIA L. DODGE
United States Magistrate Judge
