IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SAMUEL B. RANDOLPH, IV,     )
     )
     Plaintiff,     )
     )     Civil Action No. 2:19-790
     v.     )
     )     Judge Mark R. Hornak
JOHN WETZEL, *et al.*,     )     Magistrate Judge Patricia L. Dodge
     )
     Defendants.     )

## REPORT AND RECOMMENDATION

**I.    Recommendation**

Before the Court is the Motion to Dismiss (ECF 117) filed by Defendant Harry Cancelmi, the former Public Defender of Greene County, under Rule 12(b)(6). It is respectfully recommended that the Court grant this motion and dismiss with prejudice all claims Plaintiff Samuel B. Randolph, IV brought against Defendant Cancelmi in the Third Amended Complaint (ECF 115).

Unfortunately, Defendant Cancelmi recently passed away. Also pending before the Court is Plaintiff's Motion to Substitute in his place Pamela Cancelmi, the Administratrix of his Estate, under Rule 25(a)(1) (ECF 178). It is respectfully recommended that the Court deny this motion as moot because none of the claims Plaintiff brings against Defendant Cancelmi survive the motion to dismiss he filed before his passing.

**II.    Report**

    **A.  Relevant Procedural History**

Plaintiff filed this lawsuit in 2019 in the United States District Court for the Eastern District of Pennsylvania. At the time, he was proceeding pro se and was a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), which was housing him at  SCI Phoenix.

In Plaintiff's original complaint he named over fifty defendants and raised claims that challenged the conditions of his confinement at SCI Phoenix and at SCI Greene (where the DOC had previously housed him). The Eastern District Court held that the joinder of the claims pertaining to the two correctional institutions was improper. Accordingly, it issued a memorandum and order in which it severed the claims related to SCI Greene from those related to SCI Phoenix, directed its Clerk of Court to open a new lawsuit with respect to the SCI Greene claims, and transferred that new lawsuit to this Court where venue for the SCI Greene claims would be proper. (ECF 1.)

After this civil action was opened in this Court, Plaintiff sought and was granted leave to file an amended complaint. The First Amended Complaint (ECF 25) named around twenty-eight defendants (not including John/Jane Doe defendants), and brought eighteen causes of action, most of which challenged Plaintiff's conditions of confinement at SCI Greene and asserted wrongdoing on the part of DOC Secretary John E. Wetzel, SCI Greene officials, employees, and medical personnel. Among other things, Plaintiff asserted that on several occasions when he was at SCI Greene, he was unnecessarily force fed and subjected to the excessive use of force and was retaliated against because he complained about the conditions of his confinement at SCI Greene.

Defendant Cancelmi, who at the time was the Public Defender of Greene County, is one of the named defendants. Plaintiff's allegations against him are based solely on Defendant Cancelmi's representation of Plaintiff during injunction proceedings initiated by the DOC in April 2017 in the Court of Common Pleas of Greene County (the "state court"). In that proceeding, the DOC sought a court order to permit medical staff at SCI Greene to examine Plaintiff and provide him with hydration and nutrition by means of a nasogastric tube. In the First Amended Complaint, Plaintiff brought claims against Defendant Cancelmi under 42 U.S.C. § 1983, asserting that he

2

violated Plaintiff's rights because he was "operating under a conflict of interest" at the injunction proceedings and had entered into a "backdoor agreement and stipulation" with the DOC to violate Plaintiff's rights in order to obtain an injunction permitting that he be force fed. (ECF 25, ¶¶ 214-16.) Plaintiff also brought a § 1983 claim ostensibly against all defendants, alleging that they conspired to retaliate against by intentionally separating him from his food in order to manufacture a hunger strike against him and then torture him by force feeding him unnecessarily. (*Id.*, ¶ 210.)

The DOC Defendants filed a motion for judgment on the pleadings under Rule 12(c) with respect to certain claims asserted against them in the First Amended Complaint, and the Medical Defendants and Defendant Cancelmi filed separate motions to dismiss under to Rule 12(b)(6). The Court ultimately granted in part the DOC Defendants' motion, and granted in full the motions filed by the Medical Defendants and Defendant Cancelmi. (ECF 85, 90.) The claims asserted against Defendant Cancelmi were dismissed without prejudice because Plaintiff failed to assert sufficient facts to show that Defendant Cancelmi was acting "under color of state law" in his role as Plaintiff's attorney, which is a necessary component of a § 1983 claim.

Plaintiff was granted leave to file another amended complaint to attempt to replead those claims asserted that were not dismissed with prejudice. (*Id.*; ECF 92.) He then filed the Second Amended Complaint, which the Court struck because he failed to follow instructions for filing it. (ECF 105.) Plaintiff, who at the time was still proceeding pro se, then filed the Third Amended Complaint (ECF 115), which is the operative pleading. It consists of 93 pages with over 270 paragraphs, names approximately 27 defendants (not including John/Jane Doe defendants), and asserts seven causes of action against one or more of the defendants. Only two claims are relevant at this time. They are Count IV, a § 1983 claim of retaliation (*id.* at 65-71), and Count VII, a § 1983

3

claim of conspiracy (*id.* at 81-90). These claims are brought against Defendant Cancelmi and most, if not all, of the other defendants.

Plaintiff was later granted federal habeas relief, *Randolph v. Sec'y Pennsylvania Dep't of Corr.*, 5 F.4th 362, 366 (3d Cir. 2021), and released from DOC custody. The Court then granted Plaintiff's request to stay this case because he was hospitalized and awaiting surgery. (ECF 127, 128.) Plaintiff later retained private counsel, who entered their appearance on his behalf, and the stay in this case was lifted.[1] (ECF 134, 137.) The DOC and Medical Defendants have filed their respective answers (ECF 116, 125, 169) to the Third Amended Complaint[2] and they and Plaintiff are currently engaged in discovery.

Defendant Cancelmi has filed the pending Motion to Dismiss (ECF 117), which Plaintiff opposes and which is fully briefed (ECF 118, 149, 151.) After Defendant Cancelmi's recent death, Plaintiff filed the pending Motion to Substitute in his place Pamela Cancelmi, the Administratrix of his estate, under Rule 25(a)(1). (ECF 178.)

### B. Standard of Review

At the pleading stage, Rule 8 requires a "short plain statement" of facts, not legal conclusions, "showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court held that, pertaining to Rule 12(b)(6)'s standard of review, a complaint must include factual allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

---

[1] This case was also stayed for a period of time when Wellpath Holdings, Inc., the employer of some of the defendants, was in bankruptcy proceedings. (ECF 153, 157.)

[2] Plaintiff's counsel opted not to move for leave to file a counseled amended complaint and decided to proceed with the complaint filed pro se by their client.

4

662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).

In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"; "labels and conclusions"; and "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. *Id.* at 679.

> The Court of Appeals has summarized this inquiry as follows:
>
> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

In assessing a motion to dismiss, courts may generally only consider the allegations that are set forth in the complaint. *See, e.g.*, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, courts may also consider matters of public record, undisputedly authentic documents attached to a motion to dismiss, and integral documents that form the basis of a claim. *Id.; Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.3 (3d Cir. 2006). As both

Defendant Cancelmi and Plaintiff have asked the Court to take judicial notice of the docket and documents that were filed in the state court injunction proceeding, it is appropriate for the Court to consider them in evaluating this motion to dismiss.

### C. Relevant Facts Asserted In the Third Amended Complaint

On April 21, 2017, Defendants Smith, Nicolson, and John Doe Attorney sought an immediate injunction in the state court permitting the DOC to force feed Plaintiff. (ECF 115, ¶ 69.) Plaintiff asserts in the Third Amended Complaint that they falsely alleged that he was on a hunger strike, "greatly exaggerated [his] true condition," and lied to the state court "to secure the injunction, so that they could 'legally' torture [him] by force feeding him unnecessarily (*id.*, ¶¶ 69-70.)

A temporary injunction was put into effect and the state court appointed Defendant Cancelmi to represent Plaintiff during the injunction proceedings. (*Id.*, ¶ 80.) On April 24, 2017, the state court held a hearing at which Plaintiff testified that he was not on a hunger strike and that those who sought the injunction were retaliating against him. (*Id.*, ¶¶ 72-77.) Plaintiff asserts Defendant Cancelmi did not sufficiently represent him because he was operating under a conflict of interest. According to Plaintiff, Defendant Cancelmi "readily agreed to conspire to violate [his] rights" by entering into a stipulation that allowed the DOC "to circumvent and escape [its] burden" to establish that force feeding Plaintiff was necessary. (*Id.*)

Plaintiff has produced part of the transcript of the August 24, 2017, hearing, which was held via video. (ECF 149-1). At one point, the state court judge, Defendant Cancelmi, and DOC counsel held an "in chambers" conference outside the presence of Plaintiff. (*Id.* at 4-5.) During this conference, Defendant Cancelmi stated that it was his understanding that Plaintiff was "taking nutrition…taking food" at the present time. (*Id.* at 4-7.) The attorney for the DOC confirmed that

6

Plaintiff was currently eating and drinking, but said that because he sometimes refuses to do so the DOC was "considering" seeking a permanent injunction allowing it to force feed Plaintiff "in the event of an immediate and necessary need, in the future." (*Id.* at 8.)

In response, Mr. Cancelmi stated: "I don't know that there needs to be any injunction at the moment if [Plaintiff is] eating, but I wouldn't want the case to be closed because… the Department of Corrections, if [Plaintiff] starts doing what he was doing, they should be able to come right back in with a motion to get that…temporary injunction Order immediately back in place—and we'd litigate it. That would be my view. I'm not sure [Plaintiff] agrees with that." (*Id.* at 8-9.)

Defendant Cancelmi then moved to dismiss the temporary injunction "without prejudice to the Commonwealth, but with the understanding of our stipulation that the Commonwealth can immediately request that and it would be reinstated until such time as the Court could….hold a hearing, and I don't think that needs to go by the temporary rules of seventy-two hours or forty-eight hours for a hearing because it's—we're already in the continuation of this litigation." (*Id.* at 11; *see also id.* at 18-19.) Defendant Cancelmi further proposed that during the next six months, and by motion, the state court could immediately reinstate the temporary injunction until a hearing was held. (*Id.* at 11-12, 16-10.)

The DOC and the state court found Defendant Cancelmi's proposed stipulation to be satisfactory, and Plaintiff was brought into the proceeding and it was explained to him. (*Id.* at 18-19.) Plaintiff objected. (*Id.* at 19-20). The state court and Defendant Cancelmi explained the stipulation to him further, and Defendant Cancelmi stated that he would visit Plaintiff at SCI Greene as soon as possible. (*Id.* at 19-21.) The state court then adjourned the hearing. (*Id.*)

On May 5, 2017, the state court granted another motion filed by the DOC, permitting it to force feed Plaintiff. (ECF 115, ¶ 82.) Plaintiff alleges that the DOC's application once again contained false information and greatly exaggerated his condition and was part of the continuing conspiracy on the part of SCI Greene staff and medical personnel to unnecessarily force feed him to torture and retaliate against him. (*Id.*) He alleges throughout the Third Amended Complaint that he was injured and tortured during the feedings.

Plaintiff claims that Defendant Cancelmi is liable to him under § 1983 because he conspired with the other defendants to retaliate against him for filing other lawsuits and grievances against the DOC, its staff, and medical personnel. (*Id.*, ¶¶ 227, 257-74.) In support of these claims, Plaintiff alleges that at the April 24, 2017, hearing Defendant Cancelmi, "knowingly entered into an agreement via stipulation, that deliberately violated" Plaintiff's constitutional rights "by agreeing to force feed [him] unnecessarily[.]" (*Id.*, ¶ 177.) He further alleges that Defendant Cancelmi conspired with the other defendants "by illegally entering into an agreement and 'stipulation,' which Plaintiff never authorized or agreed to, and had zero knowledge of." (*Id.*)

### D.  Discussion

Section 1983 "provides a cause of action against *state actors* who violate an individual's rights under federal law." *Filarsky v. Delia*, 566 U.S. 377, 380 (2012) (emphasis added). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, *and must show that the alleged deprivation was committed by a person acting under color of state law*." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added).

Defendant Cancelmi argues that the Third Amended Complaint fails to state a § 1983 claim against him because he was not acting "under color of state law" in his role as Plaintiff's attorney. He is correct. Public defenders, like private attorneys, typically are not considered to have acted

"under color of state law" for the purposes of a § 1983 claim. *Polk County v. Dobson*, 454 U.S. 312, 325 (1981) (a lawyer, including a public defender, is not, by virtue of being an officer of the court, a state actor "under color of state law" within the meaning of § 1983); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."); *Brown v. Joseph*, 463 F.2d 1046, 148 (3d Cir. 1972) (a public defender's "client is not the Commonwealth of Pennsylvania, whose legislative processes created his office; nor the people of [the] County, who appoint him to office and pay his salary. His client is a private individual, who, by reason of indigency, is unable to retain and compensate other counsel. Essentially he is state-paid private counsel, assigned the responsibility of protecting the interests and defending the rights of a client. It is settled in this circuit that a private attorney is not a state officer so as to bring his actions within the purview of § 1983."); *see, e.g.*, *Anthony v. Burns*, No. 1:20-cv-164, 2021 WL 1670131, *2 (W.D. Pa. Apr. 8, 2021) ("an attorney acting on behalf of his client is not a state actor for the purposes of a § 1983 claim."), report and recommendation adopted, 2021 WL 1662835 (W.D. Pa. Apr. 28, 2021)).

As the Court explained when it decided the motion to dismiss Defendant Cancelmi filed in response to the First Amended Complaint, "a private party acting in a conspiracy with state officials may be liable as a state actor." *Smith v. Wambaugh*, 29 F. Supp. 2d 222, 226 (M.D. Pa. 1998) (citation omitted); *see, e.g.*, *Melo v. Hafer*, 912 F.2d 628, 638 (3d Cir. 1990) ("[P]rivate parties acting in a conspiracy with a state official to deprive others of constitutional rights are also acting 'under color' of state law."); *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) ("Private persons, jointly engaged with state officials in the challenged action, are acting see [sic] 'under color' of law for purposes of § 1983 actions."). "To prevail on a conspiracy claim under § 1983, a plaintiff

must prove that persons acting under color of state law reached an understanding to deprive him of his constitutional rights. This requires that the state actors took concerted action based on an agreement to deprive the plaintiff of his constitutional rights, and that there was an actual underlying constitutional violation of the plaintiff's rights." *Harvard v. Cesnalis*, 973 F.3d 190, 207 (3d Cir. 2020) (internal quotations and citation omitted).

Plaintiff repeats throughout the Third Amended Complaint that all defendants, including Defendant Cancelmi, engaged in a conspiracy to violate his rights and harm him. His conclusory legal statements and speculative allegations are not relevant when evaluating a motion to dismiss, however. *See, e.g.*, *Iqbal*, 556 U.S. at 678-79; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). None of the allegations set forth in the Third Amended Complaint sufficiently plead that Defendant Cancelmi was acting "under color of state law" as required to state a § 1983 claim against him. *See, e.g.*, *Talley v. Varner*, 786 F. App'x 326, 329 (3d Cir. 2019) (citing *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991)) ("mere general allegation...[or] averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient [to state a claim]" (alterations in original) (quoting *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1400 (D. Del. 1984)).

Plaintiff, who produced the transcript of the April 24, 2017 hearing, argues that it provides the factual basis behind his allegations that Defendant Cancelmi conspired with other defendants. (ECF 149-1.) Nothing in the transcript supports Plaintiff's contention that he can maintain retaliation and conspiracy claims under § 1983 against Defendant Cancelmi, however. In fact, the transcript undercuts Plaintiff's allegations and reveals no improper conduct on the part of Defendant Cancelmi.

Based on the foregoing, Plaintiff has failed to plausibly allege that Defendant Cancelmi acted "under color state law." Thus, Plaintiff has not stated any viable § 1983 claim against Defendant Cancelmi and therefore the Court should grant the Motion to Dismiss (ECF 117). At this stage of the litigation and under the circumstances presented here, it would be futile to grant Plaintiff further leave to attempt to cure his pleading deficiencies by filing another amended complaint. As a result, the dismissal of the claims Plaintiff brought against Defendant Cancelmi in the Third Amended Complaint should be with prejudice. And, for that reason, the Court should also deny as moot Plaintiff's Motion to Substitute Defendant Cancelmi with Pamela Cancelmi, the Administratrix of his estate (ECF 178).

## III.    Conclusion

It is respectfully recommended that the Court grant Defendant Cancelmi's Motion (ECF 117), dismiss all claims asserted against him in the Third Amended Complaint with prejudice, and terminate him as a defendant in this case. It is further recommended that the Court deny as moot Plaintiff's Motion to Substitute in Defendant Cancelmi's place Pamela Cancelmi, the Administratrix of his estate (ECF 178).

Under the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed 14 days from the date of this Order to file objections to this Report and Recommendation. Failure to do so will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated: February 26, 2026

/s/ Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge